MYERS *v.* STATE.

Opinion delivered April 7, 1906.

WITNESS—IMPEACHMENT.—It was proper to ask a witness for the defendant in a murder case whether he had any contract with defendant's father in regard to testifying.

Appeal from Lawrence Circuit Court, Western District; *Frederick D. Fulkerson,* Judge; affirmed.

*J. B. Judkins,* for appellant.

*Robert L. Rogers, Attorney General,* for appellee.

WOOD, J.   On a good indictment charging appellant with the crime of murder in the first degree in the killing of one Will Payne, appellant was convicted of voluntary manslaughter, and sentenced to three years in the pentitentiary.   Two grounds are urged for reversal.

1.   That the court erred in permitting the prosecuting attorney to ask the witness, Thomas East, who testified for appellant, this question: "Did you ever have any contract with Dr. Myers in regard to testifying?" and in permitting the witness to answer.   Appellant contends that the question was improper and prejudicial.   He says "that it had a tendency to prejudice the minds of the jury against appellant, and injure his cause, by attempting to show that his father, Dr. Myers, was using his influence and means to secure false testimony in behalf of the appellant, without showing that appellant was present and consenting thereto, or that he had authorized his father to do so. The question was not prejudicial, because the witness answered it in the negative.   Had it been shown that appellant's father had made an attempt to influence improperly a witness to testify falsely in behalf of his son, and had failed, such testimony would be prejudicial; but such is not the effect of the question and answer here.   On the contrary, it shows that there was no attempt by appellant's father to bribe the witness.   If the question, as asked, had been answered in the affirmative, showing that the witness was testifying under contract with Dr. Myers, it would have been proper testimony going to the credibility of the witness East.

2.   It is contended that the verdict was contrary to the evidence, but, after carefully reviewing the evidence in the record, we are of the opinion that it amply sustains the verdict.   Appellant and deceased at the time of the killing were bitter enemies, the result of a previous quarrel and fight in which appellant had been "badly beaten up" by Payne, who was the larger and stronger man.   Appellant had not seen Payne after the previous fight "until the day of the shooting."   He had been heard to say "shortly after the fight" that he "would get him yet," meaning Payne.   On the day of the shooting witnesses for the State testified that they saw Payne and appellant in front of the drug store

of the father of appellant; that the first thing that attracted their attention was the first shot; then they saw Payne running, and appellant firing at him. Appellant fired several shots at Payne while he was running. One witness testified for the State that the party shooting "seemed to be in the door of the drug store." Other witnesses for State say that Payne did not turn toward the appellant "at any time," "or attempt to do anything." Witnesses also say that after the shooting appellant came into the drug store, and said: "I got the son of a bitch; I fixed him." Deceased was shown to have been shot in the back and on the right side. True, testimony for appellant tended to show threats on part of Payne to kill Dr. Myers and his son, which threats were communicated to appellant on the day of the killing, and the appellant's own testimony tends to prove that Payne was the aggressor at the time of the killing. But the weight of the evidence was for the jury.

From the viewpoint of the State, the evidence certainly warranted a verdict for even a higher degree than the jury found.

Affirm.

HILL, C. J., not participating.